# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| THE GRIP MASTER CO. PTY. LTD., | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-07-4116 |
| | § | |
| THE GRIPMASTER USA, INC. and | § | |
| HARRY E. SEWILL, | § | |
|     Defendants. | § | |

## MEMORANDUM ON CLAIM CONSTRUCTION

This patent case is before the Court for construction of the disputed claim terms in United States Patent No. 6,449,803 ("the '803 Patent"). The Court conducted a hearing pursuant to *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 390 (1996) ("*Markman* hearing"), on July 11, 2008. Based on the evidence before the Court, the arguments presented by counsel, and the governing legal authorities, the Court issues this Memorandum construing the disputed claim terms.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff The Grip Master Co. Pty. Ltd. ("Grip Master") is the owner by assignment of the '803 Patent, entitled "Grip for a Handle or Shaft." The invention relates to a grip for a handle, generally for a golf club or other article of sporting

equipment, having a strip of material wound around the handle and held in place by a "skirt" or "flange."

## II.     GENERAL LEGAL STANDARDS FOR CLAIM CONSTRUCTION

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)), *cert. denied*, 546 U.S. 1170 (2006). The patent claims in issue must be construed as a matter of law to determine their scope and meaning. *See, e.g., Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 390 (1996), *aff'g*, 52 F.3d 967, 976 (Fed. Cir.) (*en banc*); *Verizon Svcs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1317 (Fed. Cir. 2007).

"Claim terms are entitled to a heavy presumption that they carry their ordinary and customary meaning to those skilled in the art in light of the claim term's usage in the patent specification." *Elbex Video, Ltd. v. Sensormatic Electronics Corp.*, 508 F.3d 1366, 1371 (Fed. Cir. 2007) (citing *SuperGuide Corp. v. DirecTV Enters. Inc.*, 358 F.3d 870, 874 (Fed. Cir. 2004) and *Omega Eng'g, Inc. v. Raytek Corp.,* 334 F.3d 1314, 1323 (Fed. Cir. 2003)). The "ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in

question at the time of the invention, *i.e.*, as of the effective filing date of the patent application." *Phillips*, 415 F.3d at 1313. This "person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.*

For certain claim terms, "the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314 (citing *Brown v. 3M*, 265 F.3d 1349, 1352 (Fed. Cir. 2001)). For other claim terms, however, the meaning of the claim language may be less apparent. To construe those terms, the Court considers "those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean . . . . [including] the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." *Id.*

The claims "provide substantial guidance as to the meaning of particular claim terms." *Id.* The Court may consider the context in which the terms are used and the differences among the claims. *See id.* "Because claim terms are normally used

consistently throughout the patent, the usage of a term in one claim can often illuminate the meaning of the same term in other claims." *Id.* Because the claims "are part of a fully integrated written instrument," the Court may also consider the specification and the patent's prosecution history. *Id.* at 1315, 1317. When the claims use separate terms, "each term is presumed to have a distinct meaning." *Primos, Inc. v. Hunter's Specialties, Inc.*, 451 F.3d 841, 847 (Fed. Cir. 2006).

The Federal Circuit has emphasized that "there is no magic formula or catechism for conducting claim construction." *Phillips*, 415 F.3d at 1324. "The sequence of steps used by the judge in consulting various sources is not important; what matters is for the court to attach the appropriate weight to be assigned to those sources in light of the statutes and policies that inform patent law." *Id.* (citing *Vitronics*, 90 F.3d at 1582).

## III.   CONSTRUCTION OF DISPUTED CLAIM TERMS

Prior to the *Markman* hearing, the parties agreed on the proper construction of several terms in the '803 Patent. As to these claim terms, there is no dispute and the Court adopts the parties' agreed construction as set forth in the Joint Claim Construction and Prehearing Statement [Doc. # 32].

Additionally, Defendant proposed claim construction language in its Preliminary Claim Construction Chart [Doc. # 29], but those proposals were not

included in the Joint Claim Construction and Prehearing Statement [Doc. # 32] and were not pursued by Defendant at the *Markman* hearing. Nonetheless, in the interest of a complete record, the Court addressed those abandoned proposals on the record at the conclusion of the hearing.[1]

As to the disputed claim terms in the Joint Claim Construction and Prehearing Statement, the Court has carefully reviewed the '803 Patent, specifically its claims and specifications, and the prosecution history. The Court also has considered counsels' arguments presented at the *Markman* hearing, and has applied governing Federal Circuit authority. On this basis, the Court construes the following terms in the claims of the '803 Patent.

### A.    "Core Means"

"Core means" is a term used in Claims 1-8 of the '803 Patent. During the *Markman* hearing, the parties agreed with the Court's construction of the claim as

---

[1]    The claim term "core means, other than said second end thereof and said skirt is positioned within the end of said handle or shaft" as used in Claims 3 and 7 of the '803 Patent is illustrated in Figure 5 and means that a portion of the core means is positioned within or inserted into the end of the shaft. The claim term "resilient material" in Claims 4 and 8 of the '803 Patent is ***not*** restricted to a material other than rubber. The parties agreed that the claim term "skirt, in use, partly overlies" in Claim 5 means that the "edge of the skirt at least partially covers at least one of a part of said body of said core means and a part of said handle and said shaft." Defendant conceded that many of its concerns were based on the products themselves and not on the claim language of the patent.

meaning "a structure to which a strip of material can be applied along a portion of the outer surface of the structure."

### B.   "First End & Second End"

"First end & second end" is a term used in Claims 1, 3, 5 and 7 of the '803 Patent. At the *Markman* hearing, Defendant agreed with Plaintiff's proposal that the term means that "the core means has two ends referred to as a first end and a second end." The Court so construes the term.

### C.   "Peripheral Flange"

A "flange" is a projection from an object used to give strength or support or to enable the attachment of other objects. *See* Cambridge Advanced Lerner's Dictionary (2008); Random House Websters Dictionary (1993). As the parties agreed during the *Markman* hearing, a "peripheral flange" as used in Claims 1 and 5 of the '803 Patent means "the skirt or fold-back portion of the core means disposed at the first end and/or the second end."

### D.   "Skirt"

The term "skirt" is used in Claims 1 and 5 of the '803 Patent. During the *Markman* hearing, the parties discussed with the Court the meaning of the term as used in the patent. During that discussion, the parties agreed that the term means "a flexible member that can be directed toward or away from the first end or the second

end." The parties also agreed that the skirt need not be annular or 360° in circumference. The Court construes the term as agreed by the parties.

### E. "Strip of Material"

The term "strip of material" is used in the '803 Patent in Claims 1 and 5. During the *Markman* hearing, the Court construed the term to mean "a long, narrow piece of material having a length that is materially larger than the width."

### F. "Wound" and "Winding"

The term "wound" is used in Claims 1 and 5 of the '803 Patent, and the term "winding" is used in Claim 5. The dispute between the parties relates to whether the strip of material must be wrapped repeatedly or may be wrapped only once. After extensive discussion of these terms during the *Markman* hearing, the Court construes the terms to mean "to be wrapped around at least one of the handle, the shaft or the core means once or repeatedly."[2]

### E. "Wound Toward" and "Winding . . . Towards"

The term "wound toward" is used in Claim 1 of the '803 Patent, and the term "winding . . . towards" is used in Claim 5. The Court considered the claim, the

---

[2] Although the parties during the *Markman* hearing advised the Court that they no longer believed the term "at least one of said handle, said shaft and said core means" as used in Claims 1 and 5 of the '803 Patent needed construction, the Court notes that the parties agree the term means "any one or more of a handle, shaft, and/or core means."

specifications, and the prosecution history, specifically the amendment dated March 14, 2002 at pages 3-4. In light of this intrinsic evidence, the Court construes the terms to mean "being wrapped around once or repeatedly such that the strip of material reaches the second end of the core means." Except that Defendant maintains its position that the material must wrap around the core means more than once, the parties agreed with the Court's construction of these claim terms.

### F.     "Prevent Unwinding of/Thereof"

The claim term "prevent unwinding of/thereof" is used in Claims 1 and 5 of the '803 Patent. The parties agreed during the *Markman* hearing that the term means "restricting the reversal of the winding of the strip from at least one of the handle, the shaft or the core means." The Court agrees and so construes the term.

### G.     "Over"

The term "over" is used in Claims 1 and 5 of the '803 Patent. During the *Markman* hearing, Defendant agreed to the construction proposed by Plaintiff. The Court also concludes that Plaintiff's construction is correct and construes the term "over" to mean that the "skirt at least partially covers the wound strip."

### H.     "Overlapping"

The parties dispute the proper construction of the term "overlapping," found in Claim 5 of the '803 Patent. Plaintiff argues that the term requires only that the strip

of material cover part of the handle, shaft, or core means. Defendant argues that the strip of material must be wound so that the edge of the material overlaps itself as it is wound around the core means.

The relevant portion of Claim 5, a method claim, requires "winding a strip of material ***in an overlapping manner over*** at least one of said handle, said shaft and said core means . . .." *See* '803 Patent, Claim 5(ii). Were the Court to construe the term "overlapping" as proposed by Plaintiff to mean that the strip of material need only overlap the handle, shaft or core means, the word "over" in Claim 5(ii) would be superfluous and without a distinct meaning.[3] This would be contrary to the presumption that different terms have separate meanings and should not be read out of the claim. *See Primos, Inc. v. Hunter's Specialties, Inc.*, 451 F.3d 841, 847 (Fed. Cir. 2006). Based on the intrinsic evidence in the record and binding legal authority, most importantly the Federal Circuit's holding in *Primos*, the Court construes the term "overlapping" as used in Claim 5 of the '803 Patent to mean "winding the strip of material so that the edge of the strip of material partially covers the edge of the part of the strip of material previously wound."

---

[3] The Court's construction is also supported by the language in the specifications cited by Plaintiff. *See* '803 Patent, Col. 1, lines 60-63; Col. 2, lines 45-50; and Col. 3, lines 29-42.

## IV. **CONCLUSION**

The Court accepts the parties' agreements regarding the proper construction of the agreed terms in the '803 Patent. The Court has primarily considered the intrinsic evidence, including the prosecution history. Based on the evidence and the application of governing claim construction principles, the Court construes the disputed terms in the claims of the '803 Patent as set forth herein.

SIGNED at Houston, Texas, this **15th** day of **July, 2008**.

_____
Nancy F. Atlas
United States District Judge